Justine Wise Polier, J.
This ease presents one of the many variations of factors in which, where parties married and later separated, the husband claims no responsibility for support, on the ground that either his or the petitioner’s divorce from a prior spouse was not valid. Reading the cases in this field reveals the tortuous and tortured process by which courts have sought to uphold the strict rules of law concerning the meaning of a marriage void ab initio by reason of incapacity to marry and have also tried to avoid condoning some of the most glaring abuses of that doctrine against innocent parties. They have not been too successful in the latter direction.
In the instant case the petitioner and the respondent were married in Westchester, New York, shortly after the petitioner secured a divorce in Florida from her prior husband. The petitioner had not seen her husband for over five years and had had a child out-of-wedlock who lived with her when she met the respondent. After the parties had lived together in New York with the child for several years, the respondent accompanied the petitioner to a lawyer in regard to her securing a divorce and marrying the respondent. The parties were advised that a Mexican decree would not be regarded as valid in New York and that the petitioner should go to Florida although this would require more time. The respondent paid the expenses and stayed with the petitioner for some days immediately prior to her securing the divorce. •
*21 The respondent now contends that since the petitioner was not domiciled in Florida as testified to before the special examiner, a fraud was perpetrated on the court in Florida, that the divorce is not valid and that the marriage is void, so that this court has no jurisdiction to order support for the petitioner on a means basis or for the child on a public charge basis.
Counsel for petitioner has contended that the Family Court has no power or jurisdiction to determine whether the divorce secured by the petitioner is voidable and must accept the marriage between the parties as valid in the absence of a determination by the Supreme Court as to the validity of the marriage. Although the fragmentation of jurisdiction in marital disputes continues, and bars any decision of the marital status between the parties by this court being regarded as res judicata, this court must, for the purpose of considering the rights and duties of the parties in regard to support, determine whether the parties are husband and wife. (Fishberg v. Fishberg, 16 A D 2d 629 [1962].) Loomis v. Loomis (288 N. Y. 222, 224 [1942] states): “In the exercise of its limited jurisdiction the court is authorized to hear and determine the cause and, of course, may determine whether the parties are husband and wife. Such determination is incidental to the exercise of any jurisdiction ”.
Counsel for the petitioner further invokes the doctrine of equitable estoppel against the respondent in that the respondent had full knowledge of the facts, provided for the petitioner’s securing the Florida divorce from the prior husband, stayed with her in Florida, and arranged for the marriage in New York. Counsel cites Zeitlan v. Zeitlan (27 A D 2d 846 [1967]). It is true that the court in that separation action held (p. 847) that the husband could not attack the Florida judgment secured by the wife against her prior husband as a defense ‘ ‘ either on the ground that those parties were not residents of that State or that it was obtained through fraud”. The court cited Johnson v. Muelberger (340 U. S. 581 [1951]). In that case the United States Supreme Court held (p. 589) that a daughter could not attack a divorce to which her deceased father had been a party: ‘ ‘ "When a divorce cannot be attacked for lack of jurisdiction by parties actually before the court or strangers in the rendering state, it cannot be attacked by them elsewhere in the Union. The Full Faith and Credit Clause forbids ”.
The Zeitlan case must be distinguished from the instant case since in that case the Florida decree was rendered on the personal appearance of both parties to the Florida action, *22 whereas in this case the prior husband was admittedly served by publication and did not appear in Florida.
The Zeitlan case, however, went beyond the issue of collateral attack of a judgment rendered in a sister State. It held (p. 847) that while the defendant in the separation suit was not estopped to show the invalidity of a Florida decree ‘ ‘ merely because he procured it, a triable issue of fact exists as to whether plaintiff was induced to marry defendant by reason of his fraudulent representations that the decree was valid and whether he should therefore now be estopped do assert its invalidity (Frankiel v. Frankiel, 23 A D 2d 770).”
In opposition to the application of the doctrine of equitable estoppel in the instant case, counsel for the respondent cites a series of decisions where the courts in this State have refused to apply it in cases where the issue of marital status between living spouses was involved. The decisions while showing some concern for the concept of equitable estoppel have repeatedly refused to apply it in accordance with the long-established definition that it arises from a person’s act or declaration to another, which affects the other’s conduct so that it would be unjust to permit the person to subsequently declare that his action or words were unfounded and that he was not bound by them in dealing with the other person.
In Honig v. Honig (181 Misc. 251 [1943], revd. 267 App. Div. 908 [1944]) the Court of Appeals (293 N. Y. 856) granted motion to dismiss an appeal from the decision of the Appellate Division which had reversed a judgment of separation granted to a wife. The court found that the defendant had facilitated the petitioner’s trip to Nevada to secure a divorce from a prior husband, that on her return he had advised her that they must be married in New Jersey and that two children had been born of the marriage. These facts were not disputed, but the appellate court held that since the petitioner had never been a legal resident of Nevada and no jurisdiction had been obtained over her prior husband, the ‘ ‘ quasi-estoppel ’ ’ invoked in Krause v. Krause (282 N. Y. 355 [1940]) did not operate against the defendant, since he was not the party who had procured the divorce.
Subsequently in Gruttemeyer v. Gruttemeyer (285 App. Div. 1185 [1955]), the court held that in an action for separation the defendant was not estopped from asserting the invalidity of the wife’s decree of divorce from her prior husband although he had made the arrangements for her trip to Florida and had recommended the attorney to her. (See, also, Newburger v. Newburger, 17 A D 2d 968 [1962]; Russell v. Russell, 27 A D *23 2d 563 [1966].) In a concurring opinion in the last case Justice Benjamin stated that if he did not consider himself bound by QruMemeyer (supra) and Newburger (supra) he 1 ‘ would be inclined to hold that the present defendant is equitably estopped to attack the ex parte Florida divorce obtained by plaintiff from her prior husband with funds supplied by the defendant ’ ’. Thus the limited application of equitable or quasi-estoppel as applied in 1903 by the New York Court of Appeals has appeared to remain frozen despite tremendous change in the mobility of families, the increase in divorce and changing mores throughout the country. In that case the court ruled that a plaintiff who had secured a foreign decree could not 1 ‘ thereafter be heard to question the jurisdiction of the court which entered the judgment or decree. (Starbuck v. Starbuck, 173 N. Y. 503, 506 [1903]. See, also, Krause v. Krause, 282 X. Y. 355 [1940].) ” This court is, therefore, not free to apply the doctrine of estoppel in the instant case under existing law, although it is satisfied that the respondent’s declarations and acts toward the petitioner not only affected but directed her conduct so that his present declaration that his words and action were unfounded and not binding on him violate the court’s sense of justice.
However, in the instant case, the evidence as submitted warrants the finding’ that the petitioner and respondent are husband and wife. The presumption in law in favor of the validity of a ceremonial marriage arises when a person enters into a second marriage and the courts in this State have persistently upheld the presumption until rebutted or overcome by adequate evidence. See Foster and Freed, Law and Family, (vol. I, p. 85): “A person having entered into two successive marriages, a presumption arises, which has been said to be one of the strongest presumptions in law, in favor of the validity of the second marriage ”.
The presumption in favor of the validity of the second marriage places on the person who seeks to rebut it the burden of proving that the prior marriage was not terminated prior to the marriage in question. In Matter of Dugro (261 App. Div. 236 [1941]) the appellate court unanimously reversed a Surrogate’s Court ruling excluding appellant as participant in a trust through her father on the ground that the mother had had prior marriage and that there was no evidence the prior marriage had been dissolved. The appellate court cited many cases and other authorities to underline the presumption of the validity of a second marriage and the extent to which the full burden of proof as to its invalidity is placed upon the person challenging its validity.
*24 Indeed, this has been the law at least since the decision of Lord Cottenham in Piers v. Piers (2 H. L. C. 331, 380) who wrote: “ A presumption * * * in favor of a marriage, can
only be negatived by disproving every reasonable possibility. ’ ’ In Schouler, Marriage, Divorce, Separation and Domestic Relations, (vol. 2, 6th ed., § 1252, p. 1488) one finds the statement: “ The parties attacking such second marriage have the burden of proof to show that neither party to the first marriage had obtained a divorce.” (See Matter of Conklin v. Tuttle, 234 App. Div. 1 [1931], affd. 260 N. Y. 663, 650 [1932].) In De Milio v. New York State Thruway Auth. (235 N. Y. S. 2d 642, 650 [1962]) the court went even further and stated: ‘ ‘ The presumption of the validity of the second marriage can be negatived only by disproving every reasonable possibility of its legality.” Here the court sustained the rights of inheritance of a second marriage, a common-law marriage in Ohio, despite testimony by the prior wife that she had never been divorced on the basis of evidence that impaired the credibility of the first wife. In Apelbaum v. Apelbaum (7 A D 2d 911, [1959]), the court held that the presumption favoring validity of marriages is such that it places upon the party who seeks to rebut it the burden of proving that the prior marriage was valid and not terminated prior to the marriage in question. (See, also, Williams v. Williams, 17 A D 2d 958 [1962]; Cominos v. Cominos, 23 A D 2d 769 [1965].) In a recent decision the rule in Apelbaum (supra) has been interpreted to hold that to challenge the validity of her marriage the wife had to show that the first spouse of the husband was living at the time of the later marriage and that the first marriage was never validly terminated prior to the present marriage. (Rappel v. Rappel, 39 Misc 2d 222 [1963].)
In the instant case the respondent has failed to submit competent evidence to rebut the presumption of the validity of the marriage with the petitioner in this State. No evidence has been submitted to establish that the first husband was living at the time of the second marriage or that the first marriage had not been terminated.
This court, therefore, finds that it has jurisdiction over the parties in regard to the question of support. The case is to be restored to the calendar on the questions of (1) whether the petitioner is entitled to support on a means basis (2) if so,, the amount of the order and (3) whether the respondent is liable for the support of the petitioner’s child on a public charge basis. The temporary order is continued.