Justine Wise Polish, J.
The petitioner and the respondent were married in 1962. In 1965, the petitioner then pregnant with a child who did not survive initiated an action for support in the Family Court. At a hearing held on December 16, 1965, the respondent was represented by private counsel and the petitioner by the Corporation Counsel. The parties stipulated to the marriage and that the petitioner was expecting a child by the respondent in February, 1966. The parties were then separated. The court found that the petitioner was entitled to separate support on a means basis. An order of $35 weekly was then entered by consent. The case next appeared before the Family Court on September 23, 1966 when the court issued an order of protection for one year under which the respondent was ‘ ‘ forbidden to approach, communicate with, molest, threaten or assault petitioner ”. There were 12 subsequent hearings for enforcement of the support order and for payment of counsel fees between 1967 and 1970.
On May 25,1970 the respondent secured a judgment of divorce ‘ ‘ because of the continuous abandonment of the plaintiff [respondent in this case] by the defendant [petitioner in this case] for a period in excess of two years ”. (Sup. Ct., Bronx County, Index No. 8676/1968.) The findings of fact, entered on that date, include: “ Seventh: That the defendant wilfully and wrongfully and without cause, abandoned the plaintiff in or about August of 1965.” The Supreme Court’s finding, thus, is in direct conflict with the finding of this court made on December 16,1965 that the petitioner was entitled to separate support from the respondent and the order entered on a means basis with the consent of the respondent following a hearing in which the respondent was represented by counsel.
This court has no knowledge of whether the Supreme Court was made aware of the hearing of December 16, 1965, the findings of this court on that date, the order entered on a means basis by consent, or the subsequent order of protection issued by this court on September 23, 1966. The Supreme Court has exclusive jurisdiction in divorce and the findings and judgment can be modified only by the Supreme Court.
The facts in this case do, however, raise the question whether the doctrine of res judicata, the law of the case, or the doctrine *89 of a collateral estoppel should not he applied where the parties are the same, the proof would be the same, and where the facts found by a court of record before whom the case was properly presented constituted the basis for a determination of the same issues!
The question of what is or should be regarded as res judicata has been the subject of many decisions and much dictum. The New York Court of Appeals has held: “ It is a well-established rule that where a matter has been submitted to an authorized judicial tribunal, its decision thereon is final between the parties, until it has been reversed, set aside or vacated; and the rule of res adjudicata applies to all judicial determinations, whether made in actions, or in summary or special proceedings, or by judicial officers in matters properly submitted for their determination.” (Culross v. Gibbons, 130 N. Y. 447, 454.)
Subsequently, the New York Court of Appeals reviewed the question of res judicata in a decision involving marital status. The court, citing Culross v. Gibbons (supra) quoted: “ The rule of res adjudicata applies to all judicial determinations, whether made in actions, or in summary or special proceedings, or by judicial officers in matters properly submitted for their determination. ’ ’ (See, Bannon v. Bannon, 270 N. Y. 484, 490, revg. 245 App. Div. 521.)
In a review of decisions involving the question of res judicata, the courts have repeatedly focused on whether in the prior adjudication the same issue between the same parties was squarely before the court. Thus, matters which were considered only collaterally or incidentally have been excluded as not res judicata. In Barrett v. Miner (119 Misc. 230, 238) the court held that a decree by the Surrogate’s Court granting letters of administration to an adopted daughter is not res judicata on the question of specific performance of a contract favoring a person regarded as a “ son ’ ’ by testator. The court stated that to invoke the doctrine of res judicata, it was necessary to show 11 that the precise question here involved was raised and determined in the Surrogate’s Court.” (See, also, Klee v. Klee, 187 App. Div. 925, revg. 171 N. Y. S. 632.)
The doctrine that where the same issue between the same parties was properly raised before an appropriate court the determination must be regarded as res judicata, unless reversed or set aside has, however, not been followed in regard to decisions by the New York State Family Court, or its predecessor court, the Domestic Relations Court of the City of New York. Examination of the cases suggests that the doctrine of res *90 judicata was whittled down by Various courts in order to achieve what the courts regarded as equitable results.
Thus in an appeal from an order of the Municipal Court denying an ex-wife’s motion for a summary judgment for arrears that had accrued under a California decree of divorce, the decision was reversed. The court held that a monthly order for a lesser amount by the Domestic Relations Court under the Uniform Support of Dependents Law was no bar to an action on arrears and that the California decree was entitled to full faith and credit. The court stated: ‘ ‘ Because of the narrowly circumscribed jurisdiction of the Domestic Relations Court, its support order is not binding on the parties in later litigation in another court # # * Res judicata may not prevail.” (Morse v. Morse, 3 Misc 2d 163,166.)
In a case where a wife moved in the Civil Court for a summary judgment to recover arrears due under support orders entered by Pennsylvania and New Jersey courts, the court in New York held that cancellation of arrears by the Family Court only limits the amounts that the Family Court would enforce, but did not modify arrears that had vested under the order of a sister State. In denying the motion to dismiss the action for such arrears, on the ground that the Family Court order canceling the arrears rendered the matter res judicata, the court referred to the Family Court as a court of limited jurisdiction and stated: ‘1 In any event, orders of the Family Court are not res judicata.” (Smith v. Smith, 48 Misc 2d 895, 899.)
This decision was in accord with an earlier decision of the Appellate Term which reversed a lower court decision denying judgment to a wife in an action for the amount due under a separation agreement, on the basis of a decision of the then Domestic Relations Court of the City of New York. (Solomon v. Solomon, 120 N. Y. S. 2d 587, 588.) In a Per Curiam, decision the appellate court, which reversed the lower court and directed judgment for the plaintiff wife stated: “ As the proceeding in the Family Court was in its substantive nature a summary prosecution for a public tort, in the present action for the amount due and unpaid to plaintiff under the separation agreement, it was neither an estoppel nor res adjudicada nor a bar thereto on the claim of being based on the same facts.”
In this decision, the court cited Loomis v. Loomis (288 N. Y. 222), which has been repeadly cited as the leading case in this area. Loomis was again cited in Matter of Tcholakian v. Tcholakian (29 A D 2d 848) which affirmed an order for support entered by the Family Court which had held a Mexican decree of divorce invalid. In affirming the Family Court order, the *91 appellate court stated: ‘1 The incidental determination by the Family Court that the Mexican divorce decree is invalid is not res judicata in the action pending between the parties in the Supreme Court (Loomis v. Loomis, 288 N. Y. 222), and the instant disposition is without prejudice to the maintenance of that action.”
In Loomis, the Court of Appeals reversed a decision of the Appellate Division which had affirmed a decision of Special Term granting a motion by the defendant to 11 dismiss an amended complaint to secure a declaratory judgment that the parties were husband and wife and that foreign decree of divorce obtained by the husband was null and void. In that case the Domestic Relations Court of the City of New York had in 1939 vacated an order of support for the petitioner on the ground that the foreign decree of divorce procured by the husband was valid. In reversing the decision of the lower courts, the Court of Appeals held that:
(1) The determination of whether the parties before the Domestic Relations Court are husband and wife was í ( incidental to the exercise of any jurisdiction. For that limited purpose there is jurisdiction of the subject matter of the marriage.” (supra, p. 224.)
(2) The determination of whether the parties before the Domestic Relations Court are husband and wife is final until a different determination is made.
(3) Such determination “ is not binding on the parties in an action in the Supreme Court in which there is directly involved the question whether the same marriage exists or has been terminated.” (supra, p. 224.)
In a concurring opinion in Loomis v. Loomis (supra, p. 225), Judge Loughrak noted that the present action for a declaratory judgment brought by the wife would be tried under the Civil Practice Act as contrasted to a hearing conducted in the Domestic Relations Court in accordance, with rules adopted by its Board of Justices.
Decisions subsequent to Loomis, by the Domestic Relations Court of the City of New York went beyond Loomis, which held only that a finding of marital status by the Domestic Relations Court was still subject to determination in a subsequent action in the Supreme Court. In 1953, a learned Justice of the Domestic Relations Court of the City of New York stated that a finding of entitlement to support on a means basis would not be res judicata in a subsequent plenary matrimonial action in the Supreme Court under Loomis (Jokai v. Jokai, 121 N. Y. S. 2d 517). Three years earlier the same Justice of the Domestic *92 Relations Court in a ease where he found that the respondent husband had not established a bona fide residence in Nevada, stated that by virtue of Loomis, his ruling would not be res judicata in a matrimonial action which either party could institute in the Supreme Court (p. 551). The court also noted that in an action for a declaratory judgment in the Supreme Court, the Civil Practice Act would be available under which counsel fee and expenses could be allowed. (Morton v. Morton, 199 Misc. 547.) At the time these two decisions were rendered, the predecessor court of the Family Court was not a court of record, was not authorized to allow counsel fees and was governed by rules of procedure determined by its own Board of Justices.
Subsequent to Loomis, and the decision relying on it the amended New York State Constitution, adopted on November 7, 1961 to become effective September 1, 1962, provided: ‘ ‘ There shall be a unified court system for the state. The state-wide courts shall consist of the court of appeals, the supreme court including the appellate divisions thereof, the court of claims, the county court, the surrogate’s court and the family court ”. (N. Y. Const., art. VI, § 1, subd. a.)
The jurisdiction of the Family Court was defined by section 13 of article VI of the Constitution.
In accordance with the constitutional provisions the new Family Court of the State of New York was established as part of the Court Reorganization Acts of 1962. (L. 1962, chs. 686-691.) At the same legislative session the Judiciary Law was amended to make the Family Court of the State of New York a court of record. (L. 1962, ch. 690, § 7.) The Judiciary Law defined the power of a court of record. (Judiciary Law, § 2-b.)
The Family Court Act, in accordance with the new constitutional provisions and the relevant sections of the Judiciary Law provided that where procedure was not prescribed by the act itself, it “ shall be in accord with rules adopted by the administrative board of the judicial conference or, if none has been adopted, with the provisions of the civil practice act to the extent that they are suitable to the proceeding involved.” (Family Ct. Act, art. 1, § 165.) Section 164 of that act, entitled 1 ‘ Judicial notice of matters of law; proof of statutes, decrees and decisions of another state or county ” directed that “ The provisions of the civil practice act and any rules regulating judicial notice and authentication and proof of records shall apply to proceedings under this act in so far as such provisions may be applied thereto. ’ ’ Further specific provisions were made for the establishment of rules of court by the Administrative Board of the Judicial Conference. (Family Ct. Act, art. 2, *93 § 212.) See Matter of Hirsch v. Kirsch (53 Misc 2d 938) holding that where no specific method of procedure is provided by the Family Court Act, provisions of the CPLR control.
The Family Court Act of 1962 authorized the Family Court to allow counsel fees to the attorney representing the wife in proceedings for herself or on behalf of her children. (Family Ct. Act, art. 4, § 438.) Subsequently this provision was enlarged to allow counsel fees in actions by a former wife including appeals, and to any person bringing an action on behalf of children. (L. 1963, ch. 809, § 16; L. 1964, ch. 52; L. 1968, ch. 331, § 2.)
It thus becomes clear that decisions in this State based on findings that the Domestic Relations Court of the City of New York was not a court of record, that the Civil Practice Act was not applicable to its procedures, that the procedures of the Domestic Relations Court were controlled by rules of practice adopted by its own Board of Justices or that counsel fees to petitioners could not be allowed (see Tell v. Tell, 53 N. Y. S. 2d 94; Houston v. Houston, 199 Misc. 469; Denton v. Denton, 179 Misc. 681; Primavera v. Primavera, 195 Misc. 942; Morton v. Morton, 199 Misc. 547, supra) are no longer applicable to decisions under the Family Court Act.
While carefully safeguarding the exclusive jurisdiction of the Supreme Court in actions for separation, annulment or divorce, the Constitution and the Legislature not only enlarged the jurisdiction of the Family Court and raised it to the status of a court of record, but enacted provisions for procedures to ensure due process.
A second question is raised in the instant case by the conclusion of law and the judgment entered in the Supreme Court. The court ordered ‘ ‘ that the issue of support for the defendant be retained by the Family Court of the State of New York pursuant to Section 466 (a) of the Family Court Act ”. When this direction by the Supreme Court was brought before this court, the Judge, then presiding, on June 4, 1970, referred the petitioner and her attorney back to the Supreme Court for clarification of the order under subdivision (a) of section 466, noting that it provided for modification of Supreme Court orders and that no order had been entered for support by the Supreme Court. Such clarification has not been received.
The Constitution of the State of New York, as adopted on November 7, 1961, effective September 1, 1962 states: ‘ ‘ The family court shall also have jurisdiction to determine, with the same powers possessed by the supreme court, the following matters when referred to the family court from the supreme court * * * and in actions and proceedings for marital separation, *94 divorce, annulment of marriage and dissolution of marriage, applications to fix temporary or permanent support ”. (N. Y. Const., art. VI, § 13, subd. c.)
Counsel for the respondent now contends that the Family Court has no power to enter any order of support under subdivision (a) of section 466 of the Family Court Act. That section is headed: ‘ ‘ Effect of granting of support in action for divorce, separation or annulment” and provides: (a) “ The supreme court may provide in an order or decree granting temporary or permanent support in an action for divorce, separation or annulment that only the family court may entertain an application to enforce or, upon a showing to the family court that there has been a subsequent change of circumstance and that modification is required, to modify such an order or decree. If the supreme court so provides, the family court shall entertain such an application and any disposition by the family court of the application is an order of the family court appealable only under article eleven of this act. ’ ’
Whether or not counsel for respondent misled the Supreme Court through submission of a judgment based on subdivision (a) of section 466, or by his silence in regard to this referral in the absence of a clarifying order by the Supreme Court, as requested by this court on June 4, 1970, neither his action nor the judgment can confer jurisdiction of this court not authorized by the Legislature. The Supreme Court does, however, have the power to refer the question of support under subdivision (a) of section 464. This case must, therefore, be referred back to the Supreme Court for reopening of the conclusion of law and the judgment.
The final question before this court in the instant case is the question of whether the arrears that accumulated under the orders of the Family Court prior to the judgment of divorce entered on May 25, 1970 are enforceable in this court. The record shows that an order was entered on a means basis by consent on December 16, 1965. That order was continued at successive hearings, plus additional orders on arrears until April 2, 1969, when the order was temporarily suspended to April 18, 1969 due to the respondent’s alleged illnesses, and when arrears were set at $350 by the Judge presiding. On March 19,1970, the Judge presiding was incorrectly advised that the parties had been divorced in January, 1970, and they were advised to appear on April 14, 1970 with copy of judgment of divorce. On the latter date counsel informed the Judge presiding that a judgment of divorce was being entered in the Bronx Supreme Court. The Judge temporarily modified the order (pending possible deter- *95 initiation) to $37 weekly to apply to arrears to be set at a future date. In fact, as noted above, the judgment of divorce was not entered until May 25,1970.
Counsel for respondent now contends that this court has no jurisdiction to enforce the order for support of this court beyond the date when the Supreme Court found that the petitioner had abandoned the respondent on or about August, 1965. The record in this case establishes that the order for support of the petitioner was entered on a means basis by consent of the respondent in December, 1965, some four months after the date when respondent alleged the abandonment. No appeal was ever taken from that order.
It would appear, from the decision of the Supreme Court, that it was not apprised of the consent order entered in this case on a means basis in December, 1965 some four months after the date of the alleged abandonment as set forth in the findings of fact by the Supreme Court.
The leading appellate cases cited by counsel for the respondent to sustain the position that this court must vacate the order of support retroactively from the date of August, 1965, and vacate the arrears do not sustain this contention. In Mirizio v. Mirizio (242 N. Y. 74, affg. 212 App. Div. 524), the court held only that the refusal of the wife to live with her husband after a civil marriage, by reason of his refusal to honor an agreement to have a religious ceremony, did not constitute a basis for seeking affirmative relief of support. Levy v. Levy (22 A D 2d 794) must be distinguished from the instant ease on three grounds. In that case the court found the respondent was not represented by counsel when the initial order was entered, whereas in the instant case the respondent was represented by counsel when the court found that the petitioner was entitled to support on a means basis and the initial order was entered on consent. In the Levy case the court found that the parties were living together when the initial order was entered and that the wife had shortly thereafter abandoned her husband without cause. In the instant case the initial order was for separate support and an order of protection was subsequently ordered by this court to protect the petitioner from any contact with the respondent. Finally, in Levy, the court found the evidence disproved that the wife was likely to become a public charge. That is not true or even alleged as a legal basis for denying support to the petitioner in the instant case. Brownstein v. Brownstein (25 A D 2d 205) is in no way relevant to the question of vacating arrears that accrued under an order of this court prior to a judgment for divorce.
*96 This court finds no basis in law or equity for the retroactive vacating of an order for support of a wife which was entered by consent when the respondent was represented by counsel. The petitioner is entitled to the arrears set at $350 by the Judge presiding on April 18, 1969, plus any additional arrears that have accumulated since that date up to May 25, 1970' when the judgment of divorce was entered.
Adjourned to December 30, 1970 for probation to report on total arrears to May 25,1970. Both sides to produce all evidence on question of arrears. In the meantime the order is temporarily modified on April 14,1970 to $37 weekly against the arrears continued, and will be credited against arrears as fixed on December 30, 1970.